OPINION OF THE COURT
Eli Wager, J.
The 1986 Legislature with the approval of Governor Mario Cuomo enacted the Long Island Power Authority Act (L 1986, ch 517). In a statement of "legislative findings and declarations” (Public Authorities Law § 1020-a), the Legislature set forth its concerns relative to the "economic well-being, health and safety of the residents of and the commerce and industry in the service area” (the Counties of Suffolk, Nassau and a portion of Queens serviced by LILCO). Constantly rising rates for electricity and declining consumer confidence in LILCO’s ability to meet the power needs of the residential, commercial and industrial population are declared to be matters of State concern. Above all, however, the specter of the "imprudent” Shoreham nuclear power plant, the imposition of its cost on the ratepayers as well as on the stockholders of the company, the uncertainties of the plant’s future "reliability, cost of construction, operation and maintenance” are given as the *747 justification for "replacing such investor owned utility with a publicly owned power authority”. (Public Authorities Law § 1020-a.) The enactment gives rise to this litigation which follows a quite similar action instituted in the Federal court (see, infra).
Thus, to date, Shoreham has generated little else but public controversy and litigation. The havoc feared by the opponents of Shoreham’s nuclear power on Long Island may have claimed LILCO as its first, and only, victim.
In this action plaintiffs, Long Island Lighting Company (LILCO), a public service corporation incorporated under the Transportation Law of the State of New York, and Herbert Jaffe (Jaffe), one of its shareholders, challenge the validity of the Long Island Power Authority Act (the LIPA Act [Public Authorities Law, art 5, tit 1-A]) and seek to enjoin its implementation. Before the court at this time is their motion for a preliminary injunction, restraining defendants, pendente lite, from taking any actions to implement the act, including but not limited to any actions to make a tender offer to purchase or exchange LILCO shares of stock for cash or securities for the purpose of enabling the State-created Long Island Power Authority (LIPA) to acquire LILCO’s stock or assets. Plaintiffs also sue as taxpayers pursuant to State Finance Law § 123-b 0).
Defendants, in addition to opposing plaintiffs’ motion, have moved to dismiss the verified complaint, pursuant to CPLR 3211 (a), asserting, inter alia, the defenses of collateral estoppel and what they have designated as "judicial estoppel”, otherwise known as estoppel against inconsistent positions in judicial proceedings. ■
Looking first at the request for preliminary injunctive relief, it is readily apparent that plaintiffs’ motion is, at best, premature. Essential to any application for such a drastic provisional remedy are the likelihood of the movant’s ultimate success in the action in which the motion is made and the danger that, in the event of its denial, the movant will be irreparably harmed (Matter of Town of Stony Point v New York State Off. of Mental Retardation & Developmental Disabilities, 78 AD2d 858; Matter of Nelson, 110 AD2d 535, 536). At this juncture, defendants have taken no steps which would indicate the imminence of a tender offer so as to create a basis for urgent intervention by this court. Indeed, as of the date of argument of this motion, the results of the feasibility study *748 required by LIPA Act (Public Authorities Law) § 1020-h (2) as a prerequisite to LIPA’s acquisition of LILCO or any of its securities or assets had not been published and the absence of urgency would appear to have been conceded by plaintiffs when, in connection with the instant application, they did not seek the issuance of a temporary restraining order. Under the circumstances, a present danger of irreparable harm has not been demonstrated and, therefore, the motion for a preliminary injunction is denied.
Turning, now, to defendants’ dismissal motion, the essence of plaintiffs’ contention is that the LIPA Act runs afoul of the Due Process (art I, § 6) and Equal Protection (art I, § 11) Clauses of the NY Constitution in that its provisions are allegedly intended to and, unless enjoined, will prevent LILCO and its shareholders from realizing the fair value of the company in a State (LIPA) takeover.
A similar challenge to the LIPA Act as purportedly violative of the comparable provisions of US Constitution, 14th Amendment formed a significant portion of the substance of an action instituted by plaintiff, LILCO, in the United States District Court for the Northern District of New York (Long Is. Light. Co. v Cuomo, 666 F Supp 370) against the defendants herein and others. By a memorandum decision and order, dated August 4, 1987, that court (Munson, Ch. J.) sustained the validity of the LIPA Act while, at the same time, finding that its companion law, the Used and Useful Act (Public Service Law §66 [24]), was violative of the Federal Equal Protection Clause.
It is evident from the scholarly opinion of Chief Judge Munson (supra, at 407-409) that the contentions set forth in paragraph "28” of the verified complaint in the instant action had similarly been asserted in the Federal litigation and had been considered and addressed by him in a manner unfavorable to LILCO. If this court were to determine that the conclusions reached by the United States District Court with respect to those contentions had the effect of precluding the relitigation of the issues thus decided, it might swiftly dismiss the relevant portions of plaintiffs’ pleading herein under the theory of collateral estoppel. However, such a determination is not viewed as appropriate in this instance.
The following language, expressed by the Honorable James E. Niehoff, the recent distinguished Justice of this court and of the Appellate Division, Second Department, in Becker v *749 Levitt (81 Misc 2d 664, 668), is most significant: "It is well settled that State courts are not bound by Federal decisions in cases in which a statute is tested against the provisions of the Federal Constitution, notwithstanding that those provisions are essentially, if not completely, identical to State constitutional provisions. At the same time, it is well established that Federal decisions in cases of this kind are of highly persuasive effect as authorities in State courts, and only rarely will a statute held by the Federal courts not to be in conflict with the Federal Constitution fail to survive a State court test against a similar constitutional provision (see 8 NY Jur, Constitutional Law, § 45).”
Although it is currently LILCO’s position that the LIPA Act is wholly invalid as violative of the aforementioned New York State constitutional provisions, the effectiveness of the statute (which, a fortiori, presumes its validity) once formed the basis of a successful challenge by LILCO to a resolution of the Suffolk County Legislature (No. 850 of 1986), which had provided for the acquisition of LILCO’s stock and/or assets by a local development corporation. The substance of that challenge was LILCO’s contention, sustained by the courts (Long Is. Light. Co. v County of Suffolk, 119 AD2d 128), that the State, in enacting article 5 of title 1-A of the Public Authorities Law, had preempted the subject area of legislation.
If LILCO were the only plaintiff in the instant action, this court might well dismiss the verified complaint under the doctrine of judicial estoppel since, having once invoked the LIPA Act for its own benefit, LILCO may not now attack its constitutionality. (See, Matter of City of Syracuse, 224 NY 201, 205; Shepherd v Mount Vernon Trust Co., 269 NY 234, 247; Trask v Trask, 85 Misc 2d 980.) Plaintiff, Jaffe, however, was not a party to the Suffolk County proceeding and, therefore, rather than invoke the estoppel doctrine against LILCO, alone, the court will determine the matter upon its merits.
Although defendants’ motion is one for dismissal of the action under CPLR 3211 (a), the nature of the action is such that a determination that plaintiffs are not entitled to the declaration which they seek would not warrant a dismissal of the complaint but, rather, the court would be required to render a declaration as to the constitutionality of the statute under its scrutiny. (See, Hirsch v Lindor Realty Corp., 63 NY2d 878; Powers v General Acc. Ins. Co., 109 AD2d 830; Daly v Becker, 109 AD2d 651.)
*750 The court, therefore, will now address plaintiffs’ contentions that the LIPA Act deprives them of rights guaranteed to them under the Due Process and Equal Protection Clauses of the NY Constitution.
At the outset, let it be noted that plaintiffs’ burden in successfully challenging the validity of the statute is a substantial one. In the words of Judge Gabrielli, writing for the majority of the Court of Appeals in Hotel Dorset Co. v Trust for Cultural Resources (46 NY2d 358, 370): "There is a simple, but well-founded, presumption that an act of the Legislature is constitutional and this presumption can be upset only by proof persuasive beyond a reasonable doubt”. (See also, Lighthouse Shores v Town of Islip, 41 NY2d 7, 11.)
It should also be noted at this juncture that the due process claimed to have been denied to plaintiffs by the enactment of the subject statute is not of the procedural variety but that plaintiffs’ claims relate, rather, to the substantive element of the concept of due process of law.
In considering the effect of the due process provision of NY Constitution, article 1, § 6 upon the LIPA Act in the light of LILCO’s prior fruitless reliance upon the Federal Due Process Clause, the court has taken note of the following pertinent language as set forth in 20 NY Jur 2d, Constitutional Law, § 387: "The similarity of the state and federal due process provisions is more than a similarity of language. The impact of the provisions is the same, and a statute repugnant to the due process clause of the state Constitution is repugnant also to the due process clause of the Fourteenth Amendment.”
While, under NY Constitution, article I, §6, a State court "may impose higher standards than those held to be necessary by the Supreme Court under the corresponding Federal constitutional provision” (People v Isaacson, 44 NY2d 511, 519; emphasis supplied), it is to be noted that Isaacson was a criminal case involving serious police misconduct, described as "a brazen and continuing pattern in disregard of fundamental rights” (supra, at 523). Similarly, Sharrock v Dell Buick-Cadillac (45 NY2d 152), a case upon which plaintiffs rely in support of the proposition that "the due process clause of the State Constitution provides New York citizens broader due process protections than those afforded under the Fourteenth Amendment”, was an action in which the Court of Appeals concerned itself with "[fundamental notions of procedural [as opposed to substantive] due process” (supra, at 163) and is, therefore, inapposite.
*751 In addressing LILCO’s challenges to both the LIPA Act and the Used and Useful Act, Chief Judge Munson, citing Williamson v Lee Opt. Co. (348 US 483), stated: "The judicial inquiry to be made when a statute not affecting fundamental individual rights is challenged under the substantive due process doctrine is whether that statute bears a rational relationship to some legitimate state interest.” (Long Is. Light. Co. v Cuomo, 666 F Supp 370, 406, supra.) After outlining the legislative concerns that gave rise to the passage of both bills and after dismissing the challenge to the Used and Useful Act as an alleged abuse of the State’s police power, he further stated: "The LIPA Act as a whole withstands scrutiny under the 'rational basis’ test of substantive due process jurisprudence.” (Supra, at 407.)
That the test utilized by the Federal court in determining that the LIPA Act passes constitutional muster under the Fourteenth Amendment is the same test to be applied by this court is apparent from the statement of the Court of Appeals in Treyball v Clark (65 NY2d 589, 590): "If the challenged provision is reasonable in relation to its subject and adopted in the interests of the community, it does not violate substantive due process.” (See also, Matter of Colton v Riccobono, 67 NY2d 571, 577.)
It is unnecessary for this court to engage in a lengthy dissertation on the existence of a legitimate State interest and of a rational relationship between it and the provisions of the LIPA Act to which plaintiffs have directed their attack. Chief Judge Munson has more than adequately presented the basis for his determination and it is sufficient for the undersigned to adopt that presentation in support of the conclusion that the LIPA Act does not violate the due process provision of NY Constitution, article I, § 6.
After an extensive and illuminating tracing of the rather sinuous judicial history of the Fourteenth Amendment’s equal protection prohibition over the past half century, Chief Judge Munson concluded that the Used and Useful Act was in violation of the constitutional mandate. While not questioning the legitimacy of the legislative purpose adopted at the time of the act’s passage, namely, the assurance to utility customers that they would not "bear the staggering costs associated with a nuclear power plant that fails to commence or continue commercial operation by requiring the [Public Service Commission] to apply traditional used and useful rate-setting *752 principles”, he found the classification drawn to further that purpose to be "so under-inclusive that it must be deemed irrational.” (Long Is. Light. Co. v Cuomo, 666 F Supp 370, 423, supra.) He further determined that there was evidence that "the articulated purpose * * * underlying the Used and Useful Act was a mere pretext for an impermissible purpose offending specific prohibitions of the Constitution” (supra, at 424), namely, to cause a decline in the market value of LILCO stock to facilitate a tender offer at lower prices than would be required in the absence of the legislation. It was his conclusion that, "under all of the circumstances, an impartial legislator could not have logically concluded that the classification drawn by the Used and Useful Act 'would serve a legitimate public purpose that transcends the harm to the members of the disadvantaged class.’ [City of] Cleburne [v Cleburne Living Center], 473 U.S. [432,] at 452 * * * (Stevens, J., concurring) (footnote omitted).” (Supra, at 425.)
With respect to the LIPA Act, however, Chief Judge Mun-son found no subterfuge, holding, instead, that its purposes were legitimate and that, while it "obviously singles out LILCO * * * such a classification is closely related, and in fact necessary, to the achievement of the statute’s aims”. (Supra, at 425.) Those aims, as outlined in his decision, were "assuring that dependable and affordable sources of energy exist for residents and industry in LILCO’s service area, and creating a publicly owned power authority to acquire LILCO either through negotiation, a tender offer or the exercise of * * * eminent domain if such acquisition would realize ratepayer savings for residents and industry on Long Island”. (Supra, at 425.)
That NY Constitution, article I, § 11 affords no broader coverage than does its Federal equal protection counterpart as set forth in the Fourteenth Amendment is readily apparent from the opinion of Judge (now Chief Judge) Wachtler in Matter of Esler v Walters (56 NY2d 306, 313-314). (See also, Under 21, Catholic Home Bur. for Dependent Children v City of New York, 65 NY2d 344, 360, n 6.)
Similarly, the Court of Appeals has proclaimed that statutes which constitute "social and economic legislation that neither classify on the basis of a suspect class nor impair a fundamental right, must be upheld if the challenged classification is rationally related to achievement of a legitimate State purpose”. (Trump v Chu, 65 NY2d 20, 25, appeal dismissed 474 US 915; see also, Maresca v Cuomo, 64 NY2d 242, 250.) Chief *753 Judge Munson employed precisely that criterion in determining that the LIPA Act did not run afoul of the Federal equal protection proscription and, as with its foregoing conclusion regarding the substantive due process question raised by the instant action, this court again adopts the United States District Court’s determination as a basis for its own holding that the LIPA Act complies with the New York State equal protection standard.
Accordingly, defendants are entitled to a declaration that the LIPA Act is valid as measured by the substantive due process and equal protection requirements of both the Constitution of the State of New York and, as has already been determined by the United States District Court, the United States Constitution.
The final issue to be addressed by this court arises out of plaintiffs’ claim, as taxpayers, that they are entitled to relief under the provisions of State Finance Law § 123-b (1). The basis of that contention was the purported unconstitutionality of the LIPA Act, pursuant to which it was anticipated that disbursements of State funds would be made.
 In view of the foregoing conclusion that the LIPA Act is not violative of the Due Process and Equal Protection Clauses of the NY Constitution and since it has also been determined by the United States District Court for the Northern District of New York that the act satisfies the due process and equal protection requirements of the United States Constitution, it has not been demonstrated that the disbursements anticipated to be made in the implementation of the LIPA Act would be unlawful and, therefore, the judgment to be entered hereon shall contain, in addition to a declaration as to the constitutionality of the LIPA Act, a further declaration that plaintiffs are not entitled to relief under State Finance Law § 123-b (1).