In the Matter of LONG ISLAND LIGHTING COMPANY, Respondent, v ASSESSOR OF THE TOWN OF BROOKHAVEN et al., Appellants, and SHOREHAM-WADING RIVER CENTRAL SCHOOL DISTRICT, Intervenor-Appellant.

Second Department, March 2, 1990

## APPEARANCES OF COUNSEL

*Murphy & Bartol (Cathleen M. Deutsch* of counsel), for Assessor of the Town of Brookhaven and another, appellants.

*Lewis & Greer, P. C. (Lou Lewis* of counsel), for intervenor-appellant.

*Shea & Gould (John B. Grant, Jr., Michael Lesch, Peter C. Neger* and *Richard L. Gabriel* of counsel), and *Anthony F. Earley, Jr.,* for respondent. (One brief filed.)

## OPINION OF THE COURT

Per Curiam.

Within the context of these tax certiorari proceedings we are again asked to pass upon the constitutionality of an aspect of a portion of the Long Island Power Authority Act of 1986 (Public Authorities Law §§ 1020—1020-hh) *(see, Long Is. Light. Co. v Mack,* 137 AD2d 285). The issues raised herein relate particularly to Public Authorities Law § 1020-q, which deals with the tax implications of the Act and, more specifically, with subdivision (3) thereof, which addresses the subject of real property tax refund claims made with respect to some of the property affected by the Act.

By way of background, the purpose of the Long Island Power Authority Act was to create a publicly owned power authority (hereinafter LIPA) which could acquire any or all of the stock or assets of the Long Island Lighting Company (hereinafter LILCO) with an eye toward "assuring the provision of an adequate supply of gas and electricity in a reliable, efficient and economic manner" to the residents of Long Island (Public Authorities Law § 1020-h [1] [n]). An integral part of the Act was LIPA's acquisition of the nuclear-powered facility owned by LILCO and located at Shoreham, New York (hereinafter Shoreham plant; *see,* Public Authorities Law § 1020-b [18]). This was ultimately achieved on February 28, 1989, by virtue of a settlement agreement entered into between Governor Mario M. Cuomo and LILCO *(see, Long Is. Light. Co. v Cuomo,* 888 F2d 230, 232).

Since 1976, LILCO has been involved in litigation with the Town of Brookhaven respecting the town's tax assessments of the Shoreham plant. The instant tax certiorari proceedings were commenced by LILCO for the tax years 1976-1977 through 1978-1979 and 1980-1981 through 1986-1987, wherein LILCO seeks review of the town's assessments of the Shoreham plant for those years on the grounds that they are excessive, unequal and unlawful. If totally successful, LILCO would be entitled to a refund, inclusive of interest, in excess of $400 million. The Shoreham-Wading River School District (hereinafter the School District) has been permitted to intervene in these proceedings by virtue of its potential liability for any such tax refunds *(see,* L 1983, ch 1018).

Upon the enactment of the LIPA Act, the School District and the town, by its Assessor and Board of Assessment Review, moved for summary judgment, relying upon Public

Authorities Act § 1020-q (3), which provides, as follows: "No municipality or governmental subdivision, including a school district or special district, shall be liable to the authority or any other entity for a refund of property taxes originally assessed against the Shoreham plant. Any judicial determination that the Shoreham plant assessment was excessive, unequal or unlawful for any of the years from nineteen hundred seventy-six to the effective date of this title shall not result in a refund by any taxing jurisdiction of taxes previously paid by LILCO pursuant to such Shoreham plant assessment. The authority shall discontinue and abandon all proceedings, brought by its predecessor in interest, which seek the repayment of all or part of the taxes assessed against the Shoreham plant". Arguing that the phrase "any other entity" includes LILCO, the School District and town asserted upon their summary judgment motions that LILCO was barred from obtaining any redress herein, and thus that its petitions failed to state a cause of action. In opposition, LILCO did not dispute the fact that section 1020-q (3) applied to it, but argued instead that that provision was unconstitutional in that it violated the Equal Protection and Due Process Clauses of the United States and New York State Constitutions, and constituted a bill of attainder.

While these summary judgment motions were *sub judice,* LILCO commenced a separate action in the United States District Court for the Northern District of New York against Governor Cuomo and others (hereinafter the LIPA defendants), in which the School District and the town similarly intervened, alleging that the LIPA Act and the Used and Useful Act (L 1986, ch 518)[1] were facially unconstitutional. As is relevant to this appeal, the United States District Court, adopting the LIPA defendants' position, concluded that section 1020-q (3) did not apply to LILCO. The court wrote, in pertinent part, as follows: "Furthermore, the court believes that § 1020-q (3), when read in context and with the overall purpose of §§ 1020-p and 1020-q in mind, is not all that ambiguous. Section 1020-p exempts LIPA from paying property taxes. N.Y. Pub. Auth. Law § 1020-p (2) and (3). The removal of Shoreham as a source of tax income poses a grave financial burden on local taxing jurisdictions that had depended on

1. The Used and Useful Act amended Public Service Law § 66 to provide that if the Shoreham plant was not in commercial use by one of a specified number of dates, LILCO would not be permitted to recover construction costs for the nuclear reactor through the rates it charges to its customers.

such tax income to fund the public services they provided. Section 1020-q was devised as a means to ease the transition for these local taxing jurisdictions to other sources of revenue. N.Y. Pub. Auth. Law § 1020-q. Thus, it is provided that LIPA will make payments in lieu of property taxes to municipalities and school districts over a ten year period in progressively decreasing amounts 'after property theretofore owned by LILCO is acquired by the authority.' N.Y. Pub. Auth. Law § 1020-q (1). Subsection 1020-q (3), quoted above, is another device intended to alleviate some of the financial burden to local taxing jurisdictions that would result if Shoreham were removed as a potential source of tax revenue. It seems clear that the legislature intended that the terms of § 1020-q (3) would only apply if LILCO is taken over by LIPA, and thus that subsection's reference to 'the authority or any other entity' does not apply to LILCO (unless it somehow becomes a successor in interest to LIPA in the property at issue)" *(Long Is. Light. Co. v Cuomo,* 666 F Supp 370, 401-402).[2]

During the same period, LILCO and one of its shareholders also commenced an action in the Supreme Court, Nassau County, seeking judgment declaring the LIPA and Used and Useful Acts unconstitutional as violative of substantive due process and equal protection of the laws. Relying on the opinion of the United States District Court, the Supreme Court declared "that the LIPA Act is valid as measured by the substantive due process and equal protection requirements of both the Constitution of the State of New York and, as has already been determined by the United States District Court, the United States Constitution" *(Long Is. Light. Co. v Long Is. Power Auth.,* 138 Misc 2d 745, 753). The shareholder's appeal from the order of the Supreme Court is currently pending before this court.[3]

By order dated January 20, 1988, the Supreme Court, Suffolk County, denied the summary judgment motions made in the instant tax certiorari proceedings, finding that in light

2. The defendants appealed, and LILCO cross-appealed those portions of the order of the United States District Court for the Northern District of New York which were adverse to them. In light of the settlement agreement entered into between the parties, the defendants' appeals were dismissed upon consent, LILCO's cross appeal was dismissed as moot, those portions of the District Court's order which were adverse to LILCO were vacated, and the complaint was dismissed *(see, Long Is. Light. Co. v Cuomo,* 888 F2d 230).

3. As part of the settlement agreement previously referred to, LILCO agreed to discontinue its appeal in that case.

of the decision of the United States District Court, "this Court has no other alternative but to deny Respondents' application for summary judgment and to stay all of the Petititioners' tax review proceedings". The School District and the Assessor and Board of Assessment Review have appealed from this order.

■ We affirm, but do so on the ground that Public Authorities Law § 1020-q (3), as applied to LILCO, is unconstitutional in that it violates the Equal Protection and Due Process Clauses of both the NY and the US Constitutions.

■ Initially, it should be noted that LILCO no longer argues that section 1020-q (3) is not applicable to it. Thus, there is no need for us to interpret this provision. Were we to do so, however, we would conclude that based upon the plain language of the statute and the clear intent of the Legislature, LILCO is included within the term "any other entity" to which no municipality shall be liable for any refund of property taxes originally assessed against the Shoreham plant by virtue of the first sentence of subdivision (3) of section 1020-q. This conclusion is made even more apparent by reference to the second sentence of that section, which provides that "[a]ny judicial determination that the Shoreham plant assessment was excessive, unequal or unlawful for any of the years from nineteen hundred and seventy-six to the effective date of this title [January 15, 1987] shall not result in a refund by any taxing jurisdiction of taxes previously paid by LILCO pursuant to such Shoreham plant assessment" (Public Authorities Law § 1020-q [3]). This sentence erases all doubt as to whether the Legislature intended to preclude LILCO from recovering in the pending tax certiorari proceedings where, coincidentally, LILCO is challenging tax assessments on the Shoreham plant for the tax years 1976-1977 through 1986-1987, exclusive of 1979-1980. In this regard we note also that the Supreme Court was in error when it concluded that in light of the decision of the United States District Court, it had "no other alternative" but to deny the summary judgment motions (see, *People v Weiner,* 63 AD2d 722; *Walker v Walker,* 51 AD2d 1029; *Matter of Greenwald v Frank,* 47 AD2d 628, 630-631 [Shapiro, J., dissenting]; see also, *United States ex rel. Lawrence v Woods,* 432 F2d 1072, 1075, *cert denied* 402 US 983).

When reviewing a taxing statute to determine whether it violates the Equal Protection Clauses of the US and NY Constitutions (US Const, 14th Amend, § 1; NY Const, art I,

§ 11),[4] the court's role is a limited one. "Taxing statutes, like other social and economic legislation that neither classify on the basis of a suspect class nor impair a fundamental right, must be upheld if the challenged classification is rationally related to achievement of a legitimate State purpose *(Western & S. Ins. Co. v Board of Equalization,* 451 US 648, 657). Moreover, the statute enjoys a presumption of constitutionality which 'can be overcome only by the most explicit demonstration that [the] classification is a hostile and oppressive discrimination against particular persons and classes. The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it' *(Madden v Kentucky,* 309 US 83, 88 * * *; *see, Maresca v Cuomo,* 64 NY2d 242, 250; *Allied Stores v Bowers,* 358 US 522, 527-528)" *(Trump v Chu,* 65 NY2d 20, 25).

■ LILCO contends that the statute at issue here impairs a fundamental right, namely, the right to judicial review *(see, Logan v Zimmerman Brush Co.,* 455 US 422; *Flushing Natl. Bank v Municipal Assistance Corp.,* 40 NY2d 731; *but see, Gibbes v Zimmerman,* 290 US 326, 332), and thus that the standard to be applied is one of strict scrutiny, that is, the government must establish that the deprivation of the fundamental right is necessary to serve a compelling State interest *(see, McLaughlin v Florida,* 379 US 184; *Matter of Slewett & Farber v Board of Assessors,* 80 AD2d 186, *mod* 54 NY2d 547). We need not decide this issue, however, because we conclude that even under the less stringent "rational basis" test, section 1020-q (3) does not pass constitutional muster.

As was previously alluded to, when the State declared its intent to replace LILCO with a publicly owned power authority, the residents of the taxing district in which the Shoreham plant is located were understandably concerned about the loss of the enormous tax revenue provided to the taxing district by the Shoreham plant, as the proposed legislation exempted the LIPA from the payment of taxes *(see,* Public Authorities Law § 1020-p). In order to prevent the financial ruin of the taxing district, the proposed legislation further provided for payments in lieu of taxes *(see,* Public Authorities Law § 1020-q [1], [2]). Apparently unsatisfied with these payments, the Town of Brookhaven adopted a resolution evincing its support for the

---

4. The Equal Protection Clause embodied in the NY Constitution is no broader in coverage than its Federal counterpart *(Under 21, Catholic Home Bur. for Dependent Children v City of New York,* 65 NY2d 344, 360, n 6).

proposed LIPA legislation on condition that the legislation contain a provision substantially similar to what is now Public Authorities Law § 1020-q (3). Thus, the State purpose to be served by the subdivision at issue seems clearly to be the assurance of the continued economic well-being of the residents of the taxing district. While this is certainly a commendable legislative goal, the existence thereof alone is not sufficient for the purposes of equal protection. There must also exist a rational reason for treating LILCO, as the owner of the Shoreham plant, differently from other taxpayers similarly situated, that is, the other taxpayers owning real property located within the taxing district. The municipal respondents, however, provide no basis, and we can think of none, upon which to conclude that a rational relationship exists between the Legislature's laudable goal and the deprivation of LILCO's statutory right to seek judicial review of the tax assessments previously levied against real property located within the taxing district, while other similarly situated taxpayers continue to enjoy such a right.

"The integrity of any system of taxation, and particularly real property taxation, rests upon the premise that similarly situated taxpayers pay the same share of the tax burden *(see, Johnson v Smith,* 297 NY 165, 170; *see also, People ex rel. Hatch v Reardon,* 184 NY 431, 445)" *(Foss v City of Rochester,* 65 NY2d 247, 254). The opportunity to commence tax certiorari proceedings conducted pursuant to article 7 of the Real Property Tax Law is one of the vehicles through which this uniformity is achieved *(Foss v City of Rochester, supra).* While we recognize that the Legislature possesses the greatest freedom in making classifications in the field of taxation *(Trump v Chu,* 65 NY2d 20, 27, *supra; Matter of Krugman v Board of Assessors,* 141 AD2d 175, 183), we conclude that the classification made in Public Authorities Law § 1020-q (3) is palpably arbitrary and results in invidious discrimination with respect to LILCO. Thus, this legislation denies LILCO equal protection, and cannot be used to preclude LILCO from continuing the instant tax certiorari proceedings.

For similar reasons we conclude that Public Authorities Law § 1020-q (3) results in a deprivation of LILCO's right to substantive due process *(see,* US Const 14th Amend; NY Const, art I, § 6). Although the Legislature cannot necessarily be required to bestow upon taxpayers the right to seek *judicial* review of the tax assessments *(see, Logan v Zimmerman Brush Co.,* 455 US 422, *supra; Matter of Slewett & Farber v Board of*

*Assessors,* 80 AD2d 186, *mod* 54 NY2d 547, *supra),* where, as here, the Legislature sees fit to grant such a right, it may not alter or restrict it arbitrarily *(Matter of Colton v Riccobono,* 67 NY2d 571). This is precisely what the Legislature has done by virtue of the enactment of Public Authorities Law § 1020-q (3). By enacting article 7 of the Real Property Tax Law, the Legislature has bestowed upon taxpayers the right to seek judicial review of their tax assessments on various grounds. By enacting Public Authorities Law § 1020-q (3), the Legislature has arbitrarily restricted LILCO's right, as owner of the Shoreham plant, to seek redress under that article. In doing so, it has violated LILCO's right to substantive due process, and thus has run afoul of both the United States and the New York State Constitutions. For this additional reason, the municipal respondents may not rely on Public Authorities Law § 1020-q (3) to secure dismissal of the instant tax certiorari proceedings.

In light of the foregoing, LILCO's remaining contentions need not be addressed.

MOLLEN, P. J., BROWN, KOOPER and MILLER, JJ., concur.

Ordered that the order is affirmed, with one bill of costs payable by the appellants appearing separately and filing separate briefs.