[621 NYS2d 717]

In the Matter of COUNTY OF SUFFOLK et al., Appellants, v NEW YORK STATE BOARD OF EQUALIZATION AND ASSESSMENT, Respondent.

Third Department, January 19, 1995

## APPEARANCES OF COUNSEL

*Pelletreau & Pelletreau,* Melville *(Richard Hamburger* of counsel); *Lewis & Greer, P. C.,* Poughkeepsie *(Michael J. Englert* of counsel); *Robert J. Cimino, County Attorney* of Suffolk County, Hauppauge; *Emily Pines, Town Attorney* of Town of Brookhaven, Medford; *Murphy, Bartol & O'Brien,* Mineola; and *Sapienza & Frank,* Massapequa, for appellants.

*Dennis C. Vacco, Attorney-General,* Albany *(Frank K. Walsh* and *Peter G. Crary* of counsel), for respondent.

## OPINION OF THE COURT

CREW III, J.

This appeal concerns the sale of the Shoreham Nuclear Power Plant and the resulting transition assessments made on that property by respondent pursuant to RPTL 545. Although the precise issue presented on appeal is rather narrow, the transfer in ownership of the plant and the corresponding tax liability incurred have been the subject of prior litigation *(see, Long Is. Power Auth. v Shoreham-Wading Riv. Cent. School Dist.,* 195 AD2d 140, *lv dismissed* 83 NY2d 1001), and a brief history is necessary to fully understand the issue now before us.

On February 29, 1992, the Long Island Power Authority (hereinafter LIPA) acquired the Shoreham Nuclear Power Plant from the Long Island Lighting Company (hereinafter LILCO) for the sum of $1. Because LIPA, a State public authority, is an " '[a]gency of the state' " within the meaning of RPTL 545 (7) (a), the Shoreham plant became exempt from taxation as a result of the transfer of ownership.[1] Prior to the

---

1. In accordance with RPTL 545 (1), whenever the State or an agency thereof acquires property, which becomes exempt as a result of the acquisition and constitutes 2% or more of a municipality's total taxable assessed valuation, respondent is to calculate a "transition assessment". The transi-

transfer of ownership, LILCO had paid the first of two install-ments of taxes due for the 1991-1992 tax year; the second payment was due on May 31, 1992. At the time the second payment was due LIPA, LILCO and petitioners County of Suffolk, Town of Brookhaven and Shoreham-Wading River Central School District (hereinafter the taxing districts) were in disagreement as to whether the upcoming payment consti-tuted the second half of the tax payment due or a payment in lieu of taxes (see, n 1, supra) and, further, when the obligation to make PILOTs began. The taxing districts took the position that the 1991-1992 taxes on the Shoreham plant became a lien on the first day of that tax year, December 1, 1991, and that the first PILOT year would begin on December 1, 1992.[2] Under this scenario, the PILOTs owed by LIPA for the 1992-1993 tax year would amount to 100% of the taxes and assessments otherwise payable but for the transfer in ownership (see, Public Authorities Law § 1020-q [1]). LILCO and LIPA, how-ever, reasoned that the Shoreham plant was removed from the tax rolls and became tax exempt on the day of its transfer, February 29, 1992, and that the first PILOT year commenced the following day, March 1, 1992. Under this analysis, the PILOTs owed by LIPA for the 1992-1993 tax year would be reduced by 10% (see, ibid.).

An interim agreement was reached whereby it was agreed, inter alia, that LIPA would make three payments to the taxing districts, including one equivalent in amount to the second half of the 1991-1992 taxes to be paid on June 1, 1992. Left unresolved was the issue of whether such payment consti-tuted a payment of taxes or a PILOT. LIPA and LILCO then

tion assessment, which is essentially a form of State aid, is designed to prevent any loss of taxable assessed valuation on a municipality's assess-ment roll during the first year following the acquisition and to limit the loss incurred in subsequent years (ibid.). With respect to the property at issue here, LIPA was required to make payments in lieu of taxes (hereinafter PILOTs) to petitioners County of Suffolk, Town of Brookhaven and Shore-ham-Wading River Central School District (hereinafter the taxing districts) (see, Public Authorities Law § 1020-q). The first year's payment was to be equal to 100% of the taxes and assessments that would have been received by the taxing districts but for the transfer in ownership, with each succeed-ing year's payment being reduced by 10%. In making a transition assess-ment under RPTL 545, respondent was required to reduce such assessment to take into account any PILOTs made pursuant to law by LIPA to the taxing districts (see, RPTL 545 [6] [a]).

2. The December 1, 1992 date represented the first day of the first tax year following the transfer in ownership of the Shoreham plant.

commenced a declaratory judgment action against petitioners.[3] Thereafter, on or about December 7, 1992, respondent established for the 1992 tax roll transition assessments of "0" for the plant, which had been reduced by the maximum amount that could be payable by LIPA as a PILOT pursuant to Public Authorities Law § 1020-q. Respondent reserved the right to reconsider the transition assessments following resolution of the declaratory judgment action. Petitioners commenced this CPLR article 78 proceeding challenging that determination in March 1993.

Shortly thereafter, Supreme Court (DiNoto, J.) rendered a decision in the related declaratory judgment action finding, *inter alia,* that the Shoreham plant became tax exempt upon its transfer to LIPA, that the first PILOT year commenced on March 1, 1992 and, hence, the June 1, 1992 payment by LIPA constituted a PILOT, not a tax payment. This decision subsequently was affirmed by the Second Department *(see, Long Is. Power Auth. v Shoreham-Wading Riv. Cent. School Dist.,* 195 AD2d 140, *supra).* According to petitioners, the net effect of these decisions is to reduce the PILOTs owed for the 1992-1993 tax year by approximately $4 million.

By resolution dated July 6, 1993, respondent declined to revise the transition assessments previously established. In so doing, respondent concluded that because it was not a party to the declaratory judgment action, it was not bound by the decisions rendered therein and was free to find, as it did, that the June 1, 1992 payment constituted a tax and, further, that the PILOT year did not commence until December 1, 1992. Supreme Court ultimately dismissed petitioners' application for CPLR article 78 relief finding, *inter alia,* that respondent's determination setting the transition assessments at "0" had a rational basis. This appeal by petitioners followed.

The issue on this appeal distills to whether, in calculating petitioners' transition assessments under RPTL 545, respondent was bound by the decisions rendered in the LIPA litigation with respect to the PILOTs attributable to the Shoreham plant. We are of the view that this inquiry must be answered in the affirmative. Resolution of the various issues raised in the LIPA litigation, including the determination of when the first PILOT year commenced and the proper treatment of the June 1, 1992 payment, turned upon the construction given Public Authorities Law § 1020-q by the respective courts.

---

3. Respondent was not a party to this action.

Thus, insofar as is relevant to this appeal, the LIPA litigation involved a purely legal question of statutory interpretation. Accordingly, even though respondent was not a party to that litigation, it nevertheless is bound by the decisions rendered therein unless we determine that the courts in the LIPA litigation misinterpreted Public Authorities Law § 1020-q.

Based upon our reading of Public Authorities Law § 1020-q, we are persuaded that the construction given that statute by the courts in the LIPA litigation was entirely correct. Public Authorities Law § 1020-q (1) provides, in relevant part, as follows: "Each year after property theretofore owned by LILCO is acquired by the authority * * * and, as a consequence, is removed from the tax rolls, the authority shall make [PILOTs] to municipalities and school districts equal to the taxes and assessments which would have been received from year to year by each such jurisdiction if such acquisition had not occurred, except for such taxing jurisdictions which tax the Shoreham plant, in which case the [PILOTs] shall in the first year after the acquisition be equal to one hundred percent of the taxes and assessments which would have been received by such taxing jurisdictions." A review of this statute makes it quite clear that the Shoreham plant became tax exempt on the date of its acquisition by LIPA, February 29, 1992. It is equally apparent from a review of the statute that the obligation to make the required PILOTs began the following day, March 1, 1992. As the Second Department correctly observed, the statute unambiguously states that PILOTs attributable to the Shoreham property "shall *in the first year after the acquisition* be equal to one hundred percent of the taxes and assessments which would have been received by such taxing jurisdictions" (Public Authorities Law § 1020-q [1] [emphasis supplied]; *see, Long Is. Power Auth. v Shoreham-Wading Riv. Cent. School Dist.,* 195 AD2d 140, 146, *supra).* Quite simply, there is nothing on the face of the statute that suggests that the Legislature intended to postpone the PILOTs attributable to the Shoreham plant until the first day of the first *tax year* following its transfer in ownership, i.e., December 1, 1992.

In conclusion, respondent's decision to disregard the judicial determinations in the LIPA litigation with respect to the PILOTs attributable to the Shoreham plant rendered its determination as to petitioners' transition assessments under RPTL 545 fundamentally flawed. Accordingly, respondent's determination is annulled, and this matter is remitted to respondent

for a redetermination of petitioners' transition assessments for the 1992-1993 tax year. The parties' remaining contentions have been examined and found to be lacking in merit.

MIKOLL, J. P., MERCURE, YESAWICH JR. and PETERS, JJ., concur.

Ordered that the judgment is reversed, on the law, with costs, petition granted to the extent that respondent's December 7, 1992 determination establishing transition assessments of "0" for the Shoreham Nuclear Power Plant for the 1992-1993 tax year is annulled, and matter remitted to respondent for further proceedings not inconsistent with this Court's decision.