OPINION OF THE COURT
 

 Jones, J.
 

 A CPLR article 78 proceeding is the appropriate procedure by which affected tax districts may obtain judicial review of the establishment by the State Board of Equalization of transition assessments under section 545 of the Real Property Tax Law. In this proceeding it was not error to grant summary judgment to the petitioning towns directing the State board to establish transition assessments with respect to the 1968 assessment rolls in such amounts as will provide them with total effective assessments of State-owned lands in amounts equaling the corresponding total effective assessments on their respective assessment rolls for the year 1967.
 

 
 *359
 
 The Towns of Arietta, Benson and Lake Pleasant in Hamilton County and their taxpaying supervisors commenced 11 article 78 proceedings, one for each of the years 1968 through 1978, to review annual determinations made by the New York State Board of Equalization and Assessment as to the amounts of transition assessments of State-owned forest lands. The State board moved under CPLR 7804 (subd [f]) in each proceeding to dismiss the petition on the ground that as a matter of law it failed to state facts sufficient to entitle petitioners to the relief sought. The towns and their supervisors cross-moved in the 1968 proceeding for summary judgment.
 

 Special Term denied the cross motion for summary judgment in the 1968 proceeding and granted the State board’s motion to dismiss the petitions in each of the 11 proceedings. On appeal the Appellate Division reversed in the 1968 proceeding, reinstated the petition, granted the towns’ cross motion for summary judgment, and remitted the matter to Supreme Court for further proceedings not inconsistent with its opinion (80 AD2d 956). In each of the other 10 proceedings, the Appellate Division reversed and reinstated the petition; summary judgment was not granted in any of these proceedings inasmuch as no motion had been made for such relief. The State board has now appealed as of right in the 1968 proceeding.
 
 [1]
 
 We affirm.
 

 The controversy between the parties relates to the determination by the State board of transition assessments of forest lands owned by the State. Such lands located within the forest preserves, as are those here in question, are subject to local real property taxation under section 532 of the Real Property Tax Law. Assessments with respect to such properties are first made by the local assessors but are then subject to the approval of the State board. In anticipation of the completion and application of a comprehensive reappraisal by the State board, section 545 was added to
 
 *360
 
 the Real Property Tax Law in 1960 to provide for “transition assessments”, designed to protect affected tax districts against substantial reductions in total assessments of State-owned lands within the district. A transition assessment was required to be established in the first year in which there was a reduction in assessment on taxable State lands which would prevent any loss of taxable assessed valuation on the assessment roll. The addition of the transition assessment to the initial, board-approved regular assessments would result in total effective assessment of State-owned lands equal to the corresponding assessments on the roll of the preceding year. Originally these transition assessments were scheduled to be tapered off at the rate of 2% of the total taxable assessed valuation for each year after the first year beginning with the year 1962. Questions arose, however, with respect to the use by the State board of a new computerized formula, and legislation was enacted in 1962 prohibiting the State board from reducing the transition assessments in 1962 by requiring it to treat 1962 rather than 1961 as the first year of reduction. Thereafter, similar annual enactments deferred the tapering of transition assessments through the year 1972.
 

 There are substantial State-owned lands within the Towns of Arietta, Benson and Lake Pleasant which have been subject to taxation under section 532, the regular local assessments of the individual parcels being subject to approval by the State board. In 1961 the State board did not approve the assessments made by the local assessors as it had in previous years, but instead approved assessments in substantially smaller amounts in most instances, thereby activating the statutory provisions for transition assessments.
 

 In their 1968 proceeding the towns asserted that after adhering to the legislative scheme for several years, the State board approved transition assessments for 1968 in amounts less than those prescribed in section 545, in consequence of which each of the towns suffered a loss of tax revenues and a lowering of tax and debt limits. An order was sought directing the State board to establish transition assessments in accordance with the statutory prescription.
 

 
 *361
 
 A similar proceeding was thereafter commenced by one or more of four towns in Hamilton County, with their respective taxpaying supervisors, as to each of the years 1969 through 1978, in which relief in the same form was sought. Pursuant to stipulation these proceedings with respect to subsequent years have been held pending the outcome of this 1968 proceeding.
 

 Section 545 as applicable here provides in pertinent part: “1. Whenever the state or an agency of the state acquires real property which becomes exempt as a result of such acquisition and which constitutes two per cent or more of the total taxable assessed valuation of the latest preceding assessment roll or there is a reduction in assessments on taxable state lands, the state board shall establish a ‘transition assessment’ which will in effect prevent any loss of taxable assessed valuation on the assessment roll for the first year affected by such occurrence or occurrences. For each succeeding year, the state board shall establish a transition assessment which will in effect limit to two per cent of the total taxable assessed valuation on the latest preceding assessment roll the loss in taxable assessed valuation on such roll as a result of such occurrence or occurrences, and (i) further acquisitions by the state or an agency of the state, or (ii) further reductions in assessments on taxable state lands, or (iii) both (i) and (ii).”
 

 Two principal issues are tendered for resolution on the appeal in our court. The first, a procedural question, is whether the towns may maintain a CPLR article 78 proceeding to challenge the method of calculation of transition assessments by the State board under section 545. The second, a substantive question, is whether, assuming the availability of an article 78 proceeding, the transition assessments here were correctly calculated.
 

 We conclude that a proceeding instituted under CPLR article 78 is the appropriate vehicle to obtain judicial review of the performance by the State board of the duties imposed on it by the Legislature under section 545. At the outset we observe that, although placed in the statutory setting of assessment procedures, in function and objective the legislatively created transition assessment is in essence, as the title of section 545 manifests, a form of
 
 *362
 
 State aid to tax districts whose assessment rolls contain forest lands owned by the State. That the statute prescribes that transition assessments “shall be, and shall be treated for all purposes as, taxable assessed valuation on such roll” (§ 545, subd 4), does not alter their essential character but serves to provide the means by which the State aid plan is to be implemented and State aid to be distributed to the tax districts entitled thereto. The establishment of transition assessments involves no judgment as to the valuation of particular parcels of real property — the normal grist of the customary assessment process; rather it is related directly to the total municipal tax base and is designed to sustain and cushion the loss of tax revenues in the face of reduction of assessments of individual parcels by the State board. The legislative pattern in the enactment of section 545 and of the annual deferrals of the 2% tapering-off provision confirms that the legislative objective was the assurance of financial assistance, not the introduction of a supplemental procedure for assessment of individual properties.
 

 Responsibility for the administration and execution of this State aid program was vested in the State board. No component of judgment or administrative discretion is involved. The critical issue in the administration of the plan, as it turns out, is the interpretation of the statute; when that issue is resolved it remains only for the State board to perform ministerial acts, the making of arithmetic reckonings. Article 78 proceedings are the familiar procedural means by which judicial scrutiny may be had of the performance by administrative agencies of legislatively imposed duties (see 8 Weinstein-Korn-Miller, NY Civ Prac, par 7801.02). The present case is no exception.
 
 [2]
 

 Coming then to the issue of substantive law presented, we agree with respondents towns and their supervisors, as did the Appellate Division, that the reckoning of transition assessments for 1968, the year here in question,
 
 *363
 
 should have been based on the year 1967, 1968 being the first year of a reduction. The deferral or “freeze” of the initial 2% tapering-off provisions of section 545 was first enacted in 1962 (L 1962, ch 269, § 3) and provided that where a transition assessment (for a first year of reduction) had been established for a 1961 assessment roll, transition assessments for subsequent years were to be established as if 1962 were the first year of reduction (i.e., there would be no 2% tapering in 1962). Subsequent annual enactments, cast in mandatory form, similarly deferred the contemplated tapering off through 1972 and provided that each of the subsequent benefited years was to be considered the first year of reduction.
 
 [3]
 
 The transition assessments with respect to the 1968 assessment rolls should, therefore, be established in such amounts as will provide total effective assessments of State-owned lands for that year equaling the corresponding total effective assessments for the year 1967.
 

 The only issues presented being issues of law and not of fact, it was not error for the Appellate Division to grant petitioners’ cross motion for summary judgment in this 1968 proceeding.
 

 For the reasons stated, the order of the Appellate Division should be affirmed, with costs.
 

 
 *364
 
 Chief Judge Cooke and Judges Jasen, Gabriele Wachtler, Fuchsberg and Meyer concur.
 

 Order affirmed.
 

 [1]
 

 . The State board moved for leave to appeal in all 11 proceedings. The motion was denied as to the 1968 proceeding on the ground that an appeal lay as of right and dismissed in the other 10 proceedings on the ground that the orders sought to be appealed from were nonfinal (54 NY2d 604, 786). It is also noted that an order of Supreme Court granting a prior motion by the State board to dismiss the 1968 proceeding had been reversed at the Appellate Division and the proceeding remanded to Supreme Court (37 AD2d 431, app dsmd 30 NY2d 771).
 

 [2]
 

 . We agree with the Appellate Division that our decision in
 
 City of Mount Vernon v State Bd. of Equalization & Assessment
 
 (44 NY2d 9601 does not call for a different result. That case presented questions in the mainstream of the normal process for the regular assessment of individual properties and as such fell within the proscriptive scope of section 700 of the Real Property Tax Law.
 

 [3]
 

 . (L 1962, ch 269; L 1963, ch 965; L 1964, ch 739; L 1965, ch 1068; L 1966, ch 277; L 1967, ch 723; L 1968, ch 802; L 1969, ch 1148; L-1970, ch 990; L1971, ch 1111; L1972, ch 909.) The relevant amendment with respect to this 1968 proceeding, which is illustrative, is chapter 802 of the Laws of 1968:
 

 “Section 1. Section three of chapter two hundred sixty-nine of the laws of nineteen hundred sixty-two, entitled ‘An act to amend the real property tax law, in relation to providing state aid to tax districts on account of loss in taxable assessed valuation of state lands,’ as last amended by chapter seven hundred twenty-three of the laws of nineteen hundred sixty-seven, is hereby amended to read as follows:
 

 “§ 3. Notwithstanding any other provision of this act, where a transition assessment, for the first year of a reduction in assessment on state lands, has been established for a town assessment roll completed in nineteen hundred sixty-one or for a village assessment roll completed in nineteen hundred sixty-two, transition assessments for the next six seven subsequent assessment rolls of such town or village shall be established as if each of such next six seven subsequent assessment rolls were the first year of such reduction and transition assessments shall hereafter be established (i) for towns as if the assessment roll completed in nineteen hundred sixty-seven sixty-eight were the first year of such reduction; and (ii) for villages as if the assessment roll completed in nineteen hundred sixty-eight sixty-nine were the first year of such reduction. All terms used in this section and section two of this act shall have the same meanings as used in section five hundred forty-five of the real property tax law, as added by this act.
 

 “§ 2. This act shall take effect immediately.”
 

 (Changes or additions in text are indicated by underline deletions by strikeouts.)