OPINION OF THE COURT
Smith, J.
 This appeal raises the issue of whether, transition assessments as provided for by RPTL 545 are applicable to decreases in tax revenue resulting from the takeover and decommissioning of the Shoreham nuclear power plant by the Long Island Power Authority (LIPA), a corporate municipal instrumentality of New York State. Since the LIPA Act does not explicitly supersede RPTL 545, and transition assessments are consistent with LIPA’s obligation to make payments in lieu of taxes (PILOTS) (Public Authorities Law § 1020-q), the order of the Appellate Division should be reversed and the matter remitted for further proceedings.
In 1987, the Legislature enacted the LIPA Act (Public Authorities Law § 1020 et seq.) which contemplated replacing the Long Island Lighting Company (LILCO) as the owner of the Shoreham nuclear power plant with LIPA. Shoreham was eventually transferred to LIPA on February 29, 1992, and litigation over LIPA’s PILOT obligations as set forth in Public Authorities Law § 1020-q ensued (the PILOT Litigation). Since the history surrounding that litigation is set forth at length in Long Is. Power Auth. v Shoreham-Wading Riv. Cent. School Dist. (88 NY2d 503 [decided herewith]), only the circumstances relevant to the controversy surrounding transition assessments are described in detail here.
Section 1020-q of the Public Authorities Law provides that in the first year after acquiring Shoreham, LIPA must pay PILOTS equal to the taxes which the taxing jurisdictions would *357 have received if there had been no State takeover of the nuclear power plant. Thereafter, PILOTS decrease by 10% each succeeding year until they are equivalent to the taxes and assessments which would have been levied on Shoreham in an inoperative state.[1]
RPTL 545 provides in relevant part,
"1. Whenever the state or an agency of the state acquires real property which becomes exempt as a result of such acquisition and which constitutes two per cent or more of the total taxable assessed valuation of the latest preceding assessment roll * * * the state board shall establish a 'transition assessment’ which will in effect prevent any loss of taxable assessed valuation on the assessment roll for the first year affected by such occurrence or occurrences. For each succeeding year, the state board shall establish a transition assessment which will in effect limit to two per cent of the total taxable assessed valuation on the latest preceding assessment roll the loss in taxable assessed valuation on such roll as a result of such occurrence or occurrences * * *
"6. In making transition assessments pursuant to this section:
"(a) for property acquired by a state public authority or by the state for the purposes of a state public authority, such transition assessments shall be reduced to take into account any payments in lieu of taxes made pursuant to law by such state public authority to the tax district, so that the total of state aid paid on each transition assessment and *358 the payment in lieu of taxes received by the tax district would be in effect equal to the state aid payable on such transition assessment computed without regard to this subdivision”.
Since LIPA was a public authority as defined by RPTL 545 at the time Shoreham was transferred (see, RPTL 545 [7] [g]), appellants, various taxing jurisdictions affected by the removal of Shoreham from the Town of Brookhaven’s tax roll, applied to respondent New York State Board of Equalization and Assessment (SBEA) for transition assessments. The transition assessments were sought to reduce the shortfall in revenue from the 10% decreases in PILOTS mandated by the LIPA Act.
In a certificate of transition assessments dated December 7, 1992, the SBEA certified that the proper transition assessment for the Town of Brookhaven’s 1992 tax roll was zero on the assumption that LIPA’s PILOT obligation was equal to the taxes which appellants would have received for the 1992-1993 tax year. However, noting that the outcome of the pending PILOT Litigation could affect the amount of transition assessments, the SBEA certification also stated, "[t]he State Board reserves the right to reconsider these transition assessments if, in its opinion, such action should be warranted.”
In March of 1993, the Supreme Court issued a decision in the PILOT Litigation. In July 1993, the SBEA reviewed its December 7, 1992 certification in light of that decision and adhered to its earlier determination that no transition assessments for the 1992-1993 tax year were warranted.[2] In November 1993, the SBEA certified transition assessments totalling approximately $53,684,080 for the 1993-1994 tax year because of the 10% decrease in PILOTS mandated by the LIPA Act.
In January 1994, the Appellate Division affirmed the order of the Supreme Court in the PILOT Litigation stating, "we dis *359 agree with the defendants and conclude that the Legislature intended that the Long Island Power Authority Act make PILOTS a complete substitution for real property taxes and assessments that otherwise would be due on the Shoreham property” (Long Is. Power Auth. v Shoreham-Wading Riv. Cent. School Dist., 195 AD2d 140, 146). Soon thereafter, the SBEA, citing to the Appellate Division opinion in the PILOT Litigation, rescinded both of its certifications on the ground that the transition assessment provisions of RPTL 545 did not apply to LIPA’s acquisition of Shoreham "unless there should be further judicial or legislative clarification of this question.”
Appellants commenced a CPLR article 78 proceeding challenging the resolution by which the SBEA rescinded the transition assessment certifications. Thereafter, the SBEA made a motion to dismiss the proceeding for failure to state a cause of action and Supreme Court granted the motion. Supreme Court held that RPTL 545 did not apply to the Shoreham transfer because the reduction in PILOTS was not solely attributable to the State takeover of the plant. Instead, Supreme Court concluded that the decrease in revenue to the taxing jurisdictions could be primarily attributed to the shutdown and decommissioning of Shoreham. Supreme Court also agreed with the Appellate Division decision that PILOTS were intended to be a "complete substitution” for all taxes and assessments which would otherwise be due on Shoreham.
On appeal, the Appellate Division affirmed. The Appellate Division held that SBEA’s decision to rescind its certifications was rational. The Appellate Division further held that the declining PILOTS mandated by the LIPA Act were in recognition of the inoperative condition of Shoreham, a condition which existed before the State takeover. Thus, any decline in revenue to the taxing jurisdictions could not be attributed to the State takeover of Shoreham, but to the declining value of the plant itself. The Appellate Division concluded that the Legislature intended PILOTS to compensate appellants for any loss of revenue from the removal of Shoreham from the tax rolls.
Appellants argue that this appeal involves a matter of statutory interpretation and that deference should not be accorded to SBEA’s conclusion that RPTL 545 is inapplicable to LIPA’s takeover of Shoreham. Appellants also contend that RPTL 545 mandates transition assessments in this case because the LIPA Act does not impliedly or explicitly supersede the transition assessment provisions of RPTL 545 and appellants face a *360 shortfall in revenue from declining PILOTS, a circumstance attributable to the takeover of Shoreham by LIPA, a State public authority. The SBEA concedes that this appeal only raises issues of statutory interpretation but contends that the proper application of the statutes supports its determination that RPTL 545 does not apply to Shoreham.
SBEA’s decision to rescind its certifications stemmed from its reliance on a judicial interpretation of the LIPA Act by the Appellate Division in the PILOT Litigation, not from any exercise of administrative expertise. Since matters of statutory construction and interpretation are particularly within the competence of the judiciary (see, Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459) and present pure questions of law, we are not limited to determining whether SBEA’s determination was rational on this appeal. We turn to the issues of whether RPTL 545 applies to LIPA’s acquisition of Shoreham and, if so, whether the LIPA Act supersedes RPTL 545.
Section 545 of the RPTL is a statute of general applicability which applies whenever "the state or an agency of the state acquires real property which becomes exempt as a result of such acquisition” and that acquisition constitutes "two per cent or more of the total taxable assessed valuation of the latest preceding assessment roll.” The statute does not contain any exemptions or restrictions for any category of real property. Nor does the statute limit its applicability to State takeovers of property for certain purposes.
The fact that Shoreham’s declining value as a power plant may lower appellants’ tax revenues is irrelevant to the issue of whether RPTL 545 applies here. The statute requires only that (1) an agent of the State acquire real property, which occurred when Shoreham was transferred to LIPA; (2) the real property become tax exempt as a result of the acquisition, which occurred here by operation of law (Public Authorities Law § 1020-p); and (3) the real property constitute at least 2% of the total taxable assessed valuation of the latest preceding tax roll, a fact not disputed by the parties to this appeal.[3] Since the threshold criteria set forth in the statute have been satisfied, nothing in section 545 prohibits appellants from seeking transi *361 tian assessments. We must now determine whether the LIPA Act supersedes the transition assessment provisions of RPTL 545.
The LIPA Act does not contain any references to RPTL 545 or to transition assessments. The LIPA Act also lacks an explicit declaration that PILOTS are intended to be a complete substitution for all taxes or assessments which would otherwise have been due on Shoreham, or due to the State takeover of the nuclear power plant. Consequently, we must determine whether the LIPA Act implicitly repeals RPTL 545 in the case of Shoreham.
"Repeal by implication is distinctly not favored in the law. Obviously, the judiciary should not lightly infer that the Legislature has repealed one of its own enactments when it has failed to do so expressly; the Legislature is hardly reticent to repeal statutes when it means to do so. Generally, a statute is deemed impliedly repealed by another statute only if the two are in such conflict that it is impossible to give some effect to both. If a reasonable field of operation can be found for each statute, that construction should be adopted [citations omitted]. These principles apply with particular force to statutes relating to the same .subject matter, which must be read together and applied harmoniously and consistently” (Alweis v Evans, 69 NY2d 199, 204).
The LIPA Act also provides, "Insofar as the provisions of this title are inconsistent with the provisions of any other law or any part thereof, the provisions of this title shall be controlling” (Public Authorities Law § 1020-gg).
Like PILOTS, RPTL 545 transition assessments are a form of State aid intended to provide a cushion against the loss of tax revenues due to State takeover of property (Matter of Town of Arietta v State Bd. of Equalization & Assessment, 56 NY2d 356, 361-362). Consequently, the LIPA Act and RPTL 545 relate to the same subject matter — the level of State aid to be provided to taxing jurisdictions when formerly taxable property becomes tax exempt as a result of the State’s acquisition of the property. Given the absence of an explicit statement by the Legislature to the contrary, settled jurisprudence requires us to read the statutes, if possible, in a manner which gives effect to both (Matter of Consolidated Edison Co. v Department *362 of Envtl. Conservation, 71 NY2d 186, 195; Matter of Natural Resources Defense Council v New York City Dept. of Sanitation, 83 NY2d 215, 222-223; Alweis, supra).
Here, it is possible to give effect to both RPTL 545 and the LIPA Act. RPTL 545 (6) requires the SBEA to decrease transition assessments to take into account any PILOT which may be mandated by law. Thus, the Legislature has already contemplated the possibility that transition assessments and PILOTS will apply to the same property. Instead of superseding one form of State aid with the other in those instances where both apply, the Legislature determined that PILOTS should be subtracted from the State aid calculated on transition assessments. We may not disturb the Legislature’s decision to balance these two forms of State aid in the manner set forth in RPTL 545 in the absence of an explicit directive by the Legislature to do so.
SBEA’s contention that the Legislature intended to displace all other laws, "consistent or not, with respect to the specific subject matter covered by the LIPA Act” is unpersuasive because the LIPA Act does not contain such an unequivocal declaration. Indeed, the only explicit statement pertaining to the repeal of other legislation refers to laws inconsistent with the LIPA Act, and RPTL 545 is consistent with LIPA’s obligation to make PILOTS.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the matter remitted to Supreme Court, with directions to remand to the State Board of Equalization and Assessment for further proceedings in accordance with this opinion including a determination of what effect, if any, judicial reductions in the assessed valuation of Shoreham will have on entitlement to transition assessments and the amounts thereof.
Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Levine and Ciparick concur.
Order reversed, with costs, and matter remitted to Supreme Court, Albany County, with directions to remand to the State Board of Equalization and Assessment for further proceedings in accordance with the opinion herein.

. Section 1020-q (1) of the Public Authorities Law provides: "Each year after property theretofore owned by LILCO is acquired by the authority by any means authorized by this title and, as a consequence, is removed from the tax rolls, the authority shall make payments in lieu of taxes to municipalities and school districts equal to the taxes and assessments which would have been received from year to year by each such jurisdiction if such acquisition had not occurred, except for such taxing jurisdictions which tax the Shoreham plant, in which case the in lieu of tax payments shall in the first year after acquisition be equal to one hundred percent of the taxes and assessments which would have been received by such taxing jurisdictions. In each succeeding year such in lieu of tax payments shall be decreased by ten percent until such time as such payments equal taxes and assessments which would have been levied on such plant in a nonoperative state.”

. The SBEA concluded that Supreme Court had erred on the law by holding, inter alla, that a payment made by LIPA in June 1992 was a PILOT rather than a tax payment. This holding had the effect of reducing LIPA’s PILOT obligations for the 1992-1993 tax year, thereby affecting the December 7, 1992 certification. Nevertheless, the SBEA did not recalculate that transition assessment, asserting that it was not bound by Supreme Court’s decision bécause it had not been a party in the PILOT Litigation. The SBEA’s decision to adhere to its December 7, 1992 certification was challenged in a CPLR article 78 proceeding. The Appellate Division annulled SBEA’s determination that recalculation of the December 7,1992 certification was unnecessary, and ordered the SBEA to ascertain transition assessments for the 1992-1993 tax year in accordance with the judicial determinations in the PILOT Litigation (Matter of County of Suffolk v New York State Bd. of Equalization & Assessment, 207 AD2d 233).

. The record reflects that the assessed value of Shoreham for the 1991-1992 tax year was $156,579;980. This represented over 90% of the taxable assessed value of the Shoreham-Wading River Central School District, the Shoreham-Wading River Public Library District, and the Wading River Fire District, and over 25% of the taxable assessed value of the Town of Brookhaven and the Town of Brookhaven Lighting District.