# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 39
In the Matter of Patrick J.
Lynch, &c. et al.,
    Respondents-Appellants,
        v.
City of New York, et al.,
    Appellants-Respondents.

MacKenzie Fillow, for appellants-respondents.
Robert S. Smith, for respondents-appellants.

SINGAS, J.:

At issue here is whether tier 3 police officers in the New York City Police Pension Fund (PPF) who otherwise might be eligible for retirement credit under the statutory provisions discussed herein may use those provisions to apply prior non-police service

- 1 -

toward their retirement eligibility. We hold that they may not. The plain language of Retirement and Social Security Law § 513 (c) (2) limits eligible prior service for those officers to police service.[1] Therefore, the proceeding should be dismissed.

I.

In 2016, the Patrolmen's Benevolent Association of the City of New York, Inc., and its president Patrick J. Lynch on behalf of its members (collectively, the PBA), commenced an action seeking a declaration that the City of New York, the PPF, and other related parties (collectively, the City), violated certain sections of the Retirement and Social Security Law and the New York City Administrative Code by refusing to permit tier 3 officers to obtain credit toward retirement eligibility for prior non-police service. The PBA also sought a declaration that the City's denials of credit for prior service breached a 2002 agreement between the parties that resolved litigation regarding what prior service counted toward New York City Police Department (NYPD) officers' retirement eligibility.

Supreme Court granted the City's motion to convert the declaratory judgment action to a CPLR article 78 proceeding and further granted in part and denied in part the parties' motion and cross-motion for summary judgment. The court held that the effect of Retirement and Social Security Law § 513 (c) (2) was "to create equivalence between [t]ier 2 and [t]ier 3" for the purpose of obtaining credit for prior service, "but frozen in time so that [t]ier 3 members receive the same creditable service benefits as [t]ier 2 members in

---

[1] For purposes of this appeal, it is undisputed that "police service" includes service as a firefighter.

1976" (2019 Slip Op 32092[U], *7 [Sup Ct, NY County 2019]). Thus, the court held that the post-1976 provisions on which the PBA relied did not apply to tier 3 officers. But the court also ruled that the City was required to permit tier 3 officers to transfer non-police service toward their retirement eligibility under a pre-1976 provision of the Administrative Code (*see id.* at *8-9). Finally, the court held that the 2002 settlement agreement did not extend any benefits to tier 3 officers because there were no such officers at the time of the agreement (*see id.* at *13).

The Appellate Division modified, holding that Retirement and Social Security Law § 513 (c) (1) set forth, for tier 3 members, the same eligibility requirements "for prior service in defined public employment" as provided in article 11 for tier 2 members, and that the effect of section 513 (c) (2) is to exclude tier 3 police members "from those broader eligibility requirements" (194 AD3d 416, 417 [1st Dept 2021]). The Court concluded that the language of section 513 (c) (2) "does not conflict" with the statutes on which the PBA relied, and the City therefore was required by those statutes to allow tier 3 officers to credit non-police service toward their retirement eligibility (*id.* at 417-418). The Court agreed with Supreme Court that the 2002 agreement did not extend benefits to tier 3 members (*see id.* at 418).

We granted the parties' motions for leave to appeal (*see* 37 NY3d 918 [2022]).

II.

The PPF is the retirement program for police officers employed by the NYPD (*see* Administrative Code of City of NY § 13-214 *et seq.*). PPF membership and the corresponding benefits are divided into tiers. Police officers who became members

between July 1, 1973, and July 1, 2009, are in tier 2.  Their benefits are governed by title

13 of the Administrative Code and article 11 of the Retirement and Social Security Law.

To address steeply mounting pension costs and budget constraints, the legislature

created tier 3, "a comprehensive retirement program designed to provide uniform benefits

for all public employees and eliminate the costly special treatment of selected groups

inherent in the previous program" (*Lynch v City of New York*, 23 NY3d 757, 765 [2014]

[*Lynch I*] [internal quotation marks omitted]).  Although established in 1976, the legislature

passed a series of two-year extensions that afforded tier 2 rights and benefits to police

officers joining the PPF until June 2009, when Governor Paterson vetoed the bill that would

have again extended tier 2 coverage (*see id.* at 766-767).  Police officers who joined the

PPF after July 1, 2009, are thus members of tier 3, and their rights and benefits are governed

by Retirement and Social Security Law article 14 (*see Lynch v City of New York*, 35 NY3d

517, 527 [2020] [*Lynch II*]).

Although article 14 "provide[s] uniform benefits for all public employees" in tier 3

(*Lynch I*, 23 NY3d at 765), it is not "a stand-alone retirement structure of benefits and

contributions" (*Lynch II*, 35 NY3d at 527).  Under Retirement and Social Security Law §

519 (1), tier 3 members may enjoy benefits established in title 13 of the Administrative

Code or elsewhere so long as those benefits are consistent with the provisions of article 14.

However, "[i]n the event that there is a conflict between the provisions of [article 14] and

the provisions of any other law or code, the provisions of [article 14] shall govern"

(Retirement and Social Security Law § 500 [a]).

As relevant to this appeal, article 14 provides that tier 3 officers are eligible for retirement after 22 years of service without regard to their age (*see generally* Retirement and Social Security Law §§ 503 [d]; 505). The issue before us is whether a tier 3 police officer's prior non-police service "qualifies to be counted as credited service pursuant to [Retirement and Social Security Law § 513]" (Retirement and Social Security Law § 501 [4]).

III.

"When presented with a question of statutory interpretation, our primary consideration is to ascertain and give effect to the intention of the [l]egislature" (*Matter of DaimlerChrysler Corp v Spitzer*, 7 NY3d 653, 660 [2006] [internal quotation marks omitted]). "The starting point for discerning legislative intent is the language of the statute itself" (*Yatauro v Mangano*, 17 NY3d 420, 426 [2011]). That is, "the literal language of a statute controls 'unless the plain intent and purpose of [the] statute would otherwise be defeated' " (*Lynch II*, 35 NY3d at 523, quoting *Matter of Anonymous v Malik*, 32 NY3d 30, 37 [2018]). We must also consider the statute as a whole, " 'and effect and meaning must, if possible, be given to the entire statute and every part and word thereof' " (*People v Pabon*, 28 NY3d 147, 152 [2016], quoting McKinney's Cons Laws of NY, Book 1, Statutes § 98 [a]).

Under article 14, all tier 3 members "shall be eligible to obtain retirement credit hereunder for previous service with a public employer if retirement credit had previously been granted for such service" (Retirement and Social Security Law § 513 [b]). Section 513 (c) (1) qualifies the creditable service grant in section 513 (b) by stating that "[a]

member shall not be eligible to obtain credit for public service with a public employer other than the state of New York, a political subdivision thereof, a public benefit corporation, or a participating employer." Section 513 (c) (2) narrows the scope further for police and fire members, directing that those members are "eligible to obtain credit for service with a public employer described in [Retirement and Social Security Law § 513 (c) (1)] only if such service, if rendered prior to [July 1, 1976] by a police/fire member who was subject to [Retirement and Social Security Law article 11], would have been eligible for credit in the police/fire retirement system or plan involved."

By its plain language, then, Retirement and Social Security Law § 513 (c) (2) limits the service that tier 3 police officers may count in determining their retirement eligibility (*see* Retirement and Social Security Law §§ 501 [4]; 503 [d]) to that which tier 2 officers were entitled before July 1, 1976. Indeed, the statute explicitly states that a tier 3 officer may obtain credit for prior service "only if" a tier 2 officer could have done so at that time, rendering the time restriction central to determining tier 3 officers' retirement eligibility. Indeed, the sole purpose of section 513 (c) (2) is to narrow, for police officers, the eligibility for creditable service set forth in section 513 (c) (1). Therefore, we conclude that the legislature intended tier 3 officers to receive the same service credit as their tier 2 counterparts, but restricted to the credit available prior to July 1, 1976.

Before July 1, 1976, the Administrative Code provided that a tier 2 officer would not be eligible for retirement until he or she "served *in the police force* for" the then-minimum period of 20 or 25 years (former Administrative Code § B18-15.0 [d] [emphasis added]; *see* former Administrative Code § B3-30.1). This language plainly demonstrates

that, prior to July 1, 1976, tier 2 officers could count only prior police service toward their retirement eligibility. Accordingly, tier 3 officers may receive retirement credit only for prior police service.

Our reasoning in *Lynch II* supports this conclusion. There, we held that tier 3 members could, pursuant to the Administrative Code, purchase service credit for time spent on temporary childcare leave (35 NY3d at 525-526). "[T]he childcare leave service credit benefit conferred upon such members" did not conflict with Retirement and Social Security Law § 513, as that section's definition of creditable service "[wa]s silent with respect to" childcare credit (*id.* at 525, 531). But here, section 513 (c) (2) is not silent as to the creditable service available to tier 3 officers; instead, it specifically provides that tier 3 officers are entitled to credit for prior service "only if" tier 2 officers were eligible for such credit before July 1, 1976. Therefore, there is a direct conflict between the provisions of section 513 and the PBA's suggested interpretation of the relevant Administrative Code provisions.

The Administrative Code and additional Retirement and Social Security Law sections on which the PBA rely do not require the City to credit tier 3 officers' non-police service toward the number of years they must serve before retirement. To begin, the Administrative Code includes as police service "for purposes of eligibility for benefits" various types of prior similar public service, such as membership in the uniformed sanitation force or uniformed correction force, and service as a peace officer, sheriff, or EMT (*see* Administrative Code §§ 13-143 [b] [1]; 13-218 [d] [2] [a]). But these provisions do not apply to tier 3 officers, as they were enacted and amended after July 1, 1976 (*see* L

1980, ch 640; L 1985, ch 907; L 2004, ch 647; L 2004, ch 728). It also bears noting that there were no tier 3 officers when the expansive language was added to the Code. If the legislature had wanted to apply the language to future tier 3 officers, "it easily could have said as much" by eliminating or amending the time restriction in Retirement and Social Security Law § 513 (c) (2) (*Lynch II*, 35 NY3d at 525).[2]

Former Administrative Code §§ B3-30.1 and B18-15.0, which were enacted prior to July 1, 1976, permitted officers who were previously in the New York City Employees' Retirement System (NYCERS) to transfer credit to the PPF for the purpose of calculating their benefits. Former section B3-30.1 did not, however, allow officers to apply NYCERS credit to their retirement eligibility. Rather, the text makes clear that officers could transfer NYCERS credit only to increase the amount of the officer's retirement allowance. The same is true of former section B18-15.0, which contained the same transfer language as section B3-30.1, and confirmed that "the period of . . . prior creditable city service" could be "counted as service as a police [officer] for the purpose only of determining the amount of [their] pension or retirement allowance." Each of these sections reiterated that "[n]o member of [the PPF] shall be eligible for retirement for service until [they have] served *in the police force* for" the minimum period (former Administrative Code §§ B3-30.1, B18-15.0 [emphasis added]).

---

[2] Indeed, following oral argument in this case, the legislature amended Retirement and Social Security Law § 513 by adding section (c) (2) (ii), which authorizes tier 3 police and fire members of the New York City fire department pension fund to obtain credit toward their years of retirement eligibility for prior EMT service, provided that service immediately precedes service in the fire department (*see* L 2023, ch 55, part HH, section 1).

Nor do the Retirement and Social Security Law provisions cited by the PBA—

sections 513 (b), 645, and 43—support its position. Retirement and Social Security Law §

513 (b) ensures that tier members receive retirement credit for previous service with public

employers. But this section simply sets forth the general circumstances under which tier 3

members may receive service credit, and thus is not a standalone mechanism by which tier

3 members, including officers, may buy back prior service to count toward retirement

eligibility. Otherwise, there would be no need for section 513 (c) (2) to single out police

officers.

Retirement and Social Security Law § 645, originally enacted in 1998, addresses

issues that arise when a tier member leaves and then rejoins the pension system. Because

it was enacted after July 1, 1976, it has no application to tier 3 officers. In any event,

section 645 is not a buy-back provision for credit toward retirement eligibility. Instead,

the statute—enacted in recognition that many public employees "temporarily left service .

. . to raise children" and would otherwise incur "severe financial loss" upon their return—

"enable[s] these former members to be reinstated into their original tier" (Assembly

Introducer's Mem, Bill Jacket, L 1999, ch 646).

Retirement and Social Security Law § 43, while in effect prior to July 1, 1976,

merely contemplates the transfer of New York State and Local Employees' Retirement

System (NYSLERS) membership to other retirement systems, including the PPF. As a

result of that transfer, the member "shall on retirement be entitled to a pension based on

salary earned during member service in both retirement systems together." Therefore,

much like former Administrative Code §§ B3-30.1 and B18-15.0, credit transferred under

section 43 impacts the amount of the retirement allowance, rather than the years needed for retirement eligibility. Any indication that the City, in practice, may have permitted tier 2 police officers to apply NYSLERS credit toward retirement eligibility cannot overcome the plain language of the statute. Moreover, if section 43 provided a standalone right to apply prior NYSLERS service to an officers' retirement eligibility under the PPF, the legislature need not have amended the current Administrative Code to broaden the types of creditable service available to tier 2 members, including for service as corrections officers and sheriffs, who are part of NYSLERS.

The PBA separately relies on the 2002 settlement agreement to support its claim that tier 3 officers are entitled to the benefits provided in Retirement and Social Security Law §§ 513 (b) and 645. We conclude that the agreement did not encompass tier 3 officers and therefore does not entitle them to those benefits. Although the tier 3 framework existed when the agreement was signed, tier 3 officers did not. Moreover, when they entered into the agreement, the parties surely were aware of Retirement and Social Security Law § 513 (c) (2)'s time restriction, as well as the fact that the provisions at issue in the agreement were enacted after July 1, 1976, and thus could not be applied to tier 3 officers.

Finally, because the PBA seeks "judicial scrutiny . . . of the performance by administrative agencies of legislatively-imposed duties" (*Matter of Town of Arietta v State Bd. of Equalization & Assessment*, 56 NY2d 356, 362 [1982]), we conclude that Supreme Court properly converted the action to this article 78 proceeding (*see e.g. Lynch I*, 23 NY3d at 732).

Accordingly, the order of the Appellate Division, insofar as appealed from, should be affirmed, with costs, and the same order, insofar as cross-appealed from, should be reversed, with costs, and the proceeding dismissed in its entirety.

Order insofar as appealed from affirmed, with costs, order insofar as cross-appealed from reversed, with costs, and proceeding dismissed in its entirety. Opinion by Judge Singas. Chief Judge Wilson and Judges Garcia, Cannataro and Troutman concur. Judges Rivera and Halligan took no part.

Decided May 23, 2023